**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Randy E.,[1]

Plaintiff,

v.

Frank Bisignano,
Acting Commissioner of Social Security,

Defendant.

Case No. 25-cv-3862 (SGE)

**ORDER**

This matter is before the Court and under its jurisdiction pursuant to 42 U.S.C. §405(g). On appeal, Plaintiff Randy E. seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties consented to the disposition of the present case by the undersigned Magistrate Judge under 28 U.S.C. §636(c). Both Mr. E and the Commissioner have fully briefed their positions, and this matter is now ripe for review.[2] (Dkts. 11, 15.) For the reasons below, the Court denies Mr. E's request for relief and grants the Commissioner's request for relief.

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Thus, when the Court refers to Plaintiff by his name, only his first name and last initial are provided.

[2] Mr. E also filed a Motion for Summary Judgment seeking judgment in his favor. (Dkt. 10.) The Federal Supplemental Rules of Civil Procedure, however, no longer allow for a motion for summary judgment in an action seeking judicial review of a decision of

## BACKGROUND

Mr. E applied for DIB under Title II and SSI under Title XVI on April 1, 2023, alleging a disability onset date of February 17, 2022. (Admin. R. at 219-28.) Mr. E's claims were initially denied on August 30, 2023, and upon reconsideration on December 13, 2023. (*Id.* at 97-116.) Mr. E then requested that an ALJ review the denials. (*Id.* at 121-122.) On July 23, 2024, the ALJ held an administrative hearing at which Mr. E, accompanied by counsel, and an independent vocational expert ("VE") testified. (*Id.* at 46-70.) The ALJ issued a decision on September 10, 2024, denying Mr. E's request for disability benefits. (*Id.* at 7-39.)

In reaching the decision, the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. §§ 404.1520(a), 416.920(a).[3] At step one, the ALJ determined that Mr. E had not engaged in substantial gainful activity since February 17, 2022, the alleged disability onset date. (Admin. R. at 12.) At step two, the ALJ found that Mr. E had the following severe impairments: cervical and lumbar degenerative disc disease, headaches,

---

the Commissioner of Social Security. *See* Fed. R. Civ. P. SS Rule 5. Accordingly, the Motion for Summary Judgment (Dkt. 10) is stricken as filed in error.

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, at step two of this process the ALJ determines whether the claimant's impairments are severe, and of a duration of at least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, at step four the ALJ must determine the claimant's Residual Functional Capacity (RFC), and whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i–v).

thoracic outlet syndrome, left knee degenerative joint disease, winged scapula of right shoulder, temporomandibular disorder, bilateral hearing loss with tinnitus, generalized anxiety disorder, major depressive disorder, mild cognitive disorder, attention deficit/hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). (*Id.* at 12-13.) At step three, the ALJ determined that Mr. E did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13-16.) The ALJ's severity determination was based on a detailed timeline of Mr. E's symptoms, beginning with a motor vehicle accident more than five years before the disability onset date, and lasting more than two years after the disability onset date. (*Id.* at 18-22.) The ALJ examined medical evidence from Mr. E's workers' compensation litigation that included independent physical evaluations from Dr. John Stark, and psychiatric records from his long-term treating psychiatrist Stephanie Olson, DNP, APRN, CNP. (*Id.* 29-31.) Weighing the evidence as a whole, the ALJ then made the following residual functional capacity ("RFC") determination:

> [C]laimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the individual may never climb ropes, ladders, or scaffolds; may frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; may only occasionally reach overhead and may frequently reach in all other directions; may not work in an environment where the noise level is greater than "moderate" as that term is defined in the Dictionary of Occupational Titles (D.O.T.) and the Selected Characteristics of Occupations (SCO); may have no exposure to extreme cold, vibration, unprotected heights or hazards, as the term hazards is defined in the D.O.T. and the SCO; can understand, remember, and carry out simple instructions; may have occasional interaction with the public, coworkers, and supervisors; can perform tasks that do not involve a specific production rate pace, such as

> assembly line work or any hourly production quota; and can adjust to occasional changes in a routine work setting.

(*Id.* at 16.) After determining Mr. E's RFC, the ALJ found at step four that Mr. E was unable to perform any of his past relevant work as actually or generally performed. (*Id.* at 31.)

At step five, the ALJ found that other jobs existed in significant numbers in the national economy that Mr. E, given his age, education, work experience, and RFC, could perform. (*Id.* at 32-33.) Relying on the testimony from the VE, the ALJ found that Mr. E could perform the job requirements of merchandise marker (D.O.T. #209.587-034) with 114,000 jobs existing nationally, office helper (D.O.T. #239.567-010) with 56,000 jobs existing nationally, and mailroom clerk (D.O.T. #209.687-026) with 48,000 jobs existing nationally. (*Id.* at 32-33.) Because the ALJ determined that Mr. E could perform jobs that exist in significant numbers in the national economy, the ALJ concluded that he was not disabled. (*Id.*)

Mr. E sought review of the ALJ's decision by the Appeals Council, which was denied on August 4, 2025. (*Id.* at 1-7.) Mr. E then filed this action challenging the ALJ's decision. (Dkt. 1.)

## STANDARD OF REVIEW

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g). Under this review, the District Court is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole."

*Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). To support their findings, the ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p.

In the judicial review of an ALJ's findings, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The decision of the ALJ to deny benefits will not be reversed by the Court "so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

## **ANALYSIS**

Mr. E contends that the case should be reversed or remanded for further proceedings based on several arguments. He first argues that the ALJ's RFC determination was unsupported by substantial evidence in the record. (Dkt. 11, at 12-13.) He contends that the ALJ failed to consider that the record "consistently and clearly" showed drastic changes in his symptoms in early 2022. (*Id.*) Instead, he argues the ALJ relied primarily on the fact that he had the same disabling symptoms for years prior to the alleged disability onset date.

(*Id.*) Mr. E next argues that the ALJ failed to consider the findings and opinions of medical examiners in his workers' compensation claims and by his long-term treating psychiatric provider. (*Id.* at 14-18.) Mr. E also cursorily asserts that the ALJ's finding that he can perform other work is not supported by substantial evidence. (*Id.* at 18.) The Commissioner argues that the ALJ's decision should be affirmed because the ALJ properly evaluated the evidence in determining Mr. E's medical impairments and the RFC, and the ALJ's decision is supported by substantial evidence. (*See* Dkt. 16.)

## I. Erroneous RFC determination

Mr. E argues that the ALJ erred in the RFC determination because the ALJ failed to consider that the record consistently and clearly illustrates the drastic changes in his symptoms and the resulting functional limitations. (Dkt. 11, at 12-13.) Mr. E argues that the ALJ's primary reliance on him having the same disabling symptoms for years prior to the alleged disability onset date is legal error. (*Id.*) The Court disagrees. Contrary to Mr. E's assertions, the ALJ made substantial findings of fact on his symptoms before and after the alleged disability onset date. (Admin. R. at 16-26.) The ALJ established a timeline of medical evidence that spanned more than five years before the motor vehicle accident that led to Mr. E's allegations of disability and encompassed the alleged onset of disability. (*Id.* at 19.) The timeline also extended to more than two years after the alleged onset of disability. (*Id.* at 20-22.)

The ALJ's findings regarding Mr. E's symptoms in this timeline were comprehensive and contradict Mr. E's assertions. The ALJ's RFC determination considered the severe nature of Mr. E's symptoms at the alleged disability onset date. The

ALJ noted that Mr. E used the Family Medical Leave Act ("FMLA") on February 17, 2022, because "the physical requirements [of Mr. E's job] were very hard for him . . . his body was screaming in pain. . . [and] . . . his neck burns like fire . . . ." (*Id.* at 20, 24.)

The Court therefore disagrees with Mr. E's argument that the ALJ failed to consider the drastic changes in symptoms that Mr. E experienced at the alleged onset of disability.

**II. Supportability and consistency of medical evidence**

Mr. E also argues that the ALJ's refusal to consider the findings and opinions of medical examiners in his workers' compensation claim and by his long-term treating psychiatric provider is legal error. Mr. E asserts that under the factors set forth in 20 C.F.R. § 404.1520c (a), the ALJ did not consider supportability and consistency factors in evaluating the medical opinion, observing that the ALJ did not reference "consistency" a single time with respect to the workers' compensation medical examiners. (Dkt. 11, at 14.) Mr. E also argues that the ALJ's failure to consider Dr. John Stark's opinions that his injuries were permanent and would cause him to miss 2-3 days of work per month indefinitely is legal error. (Dkt. 11, at 15-17.) He repeats these arguments with respect to Ms. Stephanie Olson, his long-term treating psychiatric provider. (*Id.*) Mr. E contends that the ALJ's evaluation of Ms. Olson's medical opinions was legally insufficient because the ALJ failed to consider her "extremely lengthy treatment history" with Mr. E, the frequency of their consultation, and her expertise and specialization in mental health. (*Id.* at 17-18.)

The Court rejects Mr. E's contentions. An ALJ's allocation of persuasive value is "legally sufficient . . . where they explain supportability and consistency in their decision."

*Andrea M. Y. v. Dudek,* No. 23-CV-3813 (DLM), 2025 WL 684935, at *4 (D. Minn. 2025). Although the ALJ is required to consider the relationship between the source of the medical opinion and the claimant, the source's specialization, and any other relevant factors, the ALJ need only expressly explain supportability and consistency in their decision. Of course, an opinion will be considered "more persuasive the more it is supported by objective medical evidence." *Id.* And an opinion will be more persuasive "if it is consistent with the other medical and nonmedical sources." *Id.* But an ALJ is not required to accept the entirety of a medical opinion as relevant or persuasive. *Id.* Nor is an ALJ required to "use the magic words of 'supportability' and 'consistency' . . . ." when explaining their decision. *Id.* quoting *Diane M. W. v. Kijakazi*, No. 20-CV-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. 2022).

Contrary to Mr. E's arguments, the ALJ considered the medical evaluations from his workers' compensation claims that relate to workplace limitations and ignored those that relate to whether Mr. E's motor vehicle accident was the source of symptoms that predated the alleged disability onset. (Admin. R. at 30.) The ALJ did not find Dr. Stark's opinions persuasive because Dr. Stark evaluated Mr. E on September 16, 2020, and Dr. Stark did not analyze Mr. E's symptoms after the alleged disability onset date of February 17, 2022. (*Id.* at 1486-1548.) Additionally, the ALJ did not find Ms. Olson's opinions persuasive—despite her observations that he had extreme limitations and no functional ability to perform a variety of duties—because her opinion was neither supported by nor consistent with her previous psychiatric exam from two weeks prior (*Id.* at 29.)

The Court cannot reverse or remand because the ALJ did not give some of the medical opinions more weight than others, as Mr. E suggests. *See Andrea M. Y.*, 2025 WL 684935, at *7 ("[G]overning regulations do not require that an ALJ give specific weight to any medical opinion or findings."). Nor is the Court required to reverse or remand because it disagrees with the ALJ's conclusions on the persuasive value of specific pieces of medical evidence in the record. *Id.* at *6. Rather, the only question for the Court in reviewing the ALJ's findings for legal sufficiency is whether the ALJ discussed supportability and consistency. The Court finds that the ALJ did so here, and Mr. E's arguments fail.

**III. ALJ findings on "other work"**

Lastly, Mr. E cursorily challenges the ALJ's RFC finding and conclusion that he is capable of performing "other work" because he can perform light, full-time work with accommodations. He argues the ALJ's findings are unsupported by substantial evidence. The Court disagrees.

The ALJ's finding that Mr. E is capable of "other work" is supported by the testimony of the vocational expert (VE) in response to the hypothetical question from the ALJ. The ALJ asked the VE, considering Mr. E's age, education, work experience, and RFC, if there are jobs available in large numbers in the national economy that Mr. E can perform. And the VE testified that given all of Mr. E's factors, "[he] would be able to perform the requirements of representative occupations such as merchandise marker (D.O.T. #209.587-034) with 114,000 jobs existing nationally, office helper ([D.O.T.] #239.567-010) with 56,000 jobs existing nationally, and mailroom clerk (D.O.T. #209.687-

026) with 48,000 jobs existing nationally." (Admin. R. at 31-32.) As the Commissioner argues, testimony from the VE in response to a hypothetical question that includes a claimant's impairments substantially supported by the record as a whole can be the proper basis of the ALJ finding that a claimant is not disabled. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). For these reasons, Mr. E's argument that he cannot perform "other work" also fails.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Mr. E's request for relief (Dkt. 11) is **DENIED**;

2. The Commissioner's request for relief (Dkt. 15) is **GRANTED**; and

3. This matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 5, 2026

*s/ Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge